IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GINA RAE SMITH,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | Civil Action No. 2:25-23<br><br>Magistrate Judge Patricia L. Dodge |

**REPORT AND RECOMMENDATION**

**I.    Recommendation**

It is respectfully recommended that, pursuant to Sentence Four of Section 405(g), the decision of the Commissioner of Social Security denying Plaintiff's claims for benefits be reversed and that this matter be remanded to the Commissioner for further review.

**II.    Report**

Plaintiff Gina Rae Smith ("Smith") commenced this action against the Commissioner of Social Security ("Commissioner"), under 42 U.S.C. §§ 405(g) and 1383(c)(3). Smith seeks judicial review of an unfavorable decision regarding her claims for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Smith seeks to have the Commissioner's decision vacated and remanded for further review, while the Commissioner seeks to have it affirmed. The parties have filed briefs in support of their respective positions.

For the reasons below, the Court should grant judgment in Smith's favor, vacate the decision of the Commissioner denying Smith's claims for benefits and remand this matter to the Commissioner for further review.

A. **Procedural History**

On May 18, 2022, Smith filed applications for both DIB under Title II of the Social Security Act and SSI under Title XVI of the Act. (R. 197-98, 199-206.)[1] She alleged disability beginning on August 6, 2019 due to diabetes mellitus-Type 2, hypertension, osteoarthritis of the lower back and bilateral shoulders, Bipolar I Disorder-manic depression and generalized anxiety disorder. (R. 70.) Her claims were initially denied on September 30, 2022 and again on reconsideration on January 27, 2023. (R. 109-10, 114-17, 120-22, 124-26.) She appealed, seeking a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on November 6, 2023 before ALJ Brady Carter (R. 36-68.) ALJ Carter issued an unfavorable decision on March 14, 2024, finding that Smith was not disabled under the Social Security Act. (R. 14-35.) Thereafter, Smith filed a request for review of hearing decision/order to the Appeals Council, and her appeal was denied on November 20, 2024. (R. 1-5.)

Here, Smith seeks judicial review of the denial of benefits. By order dated March 6, 2025, Smith was required to move for summary judgment by April 6, 2025. After she obtained several extensions of time, she filed a brief on August 5, 2025 (ECF No. 12). The Commissioner submitted a brief in opposition on September 8, 2025 (ECF No. 13) and Smith filed a reply brief on September 22, 2025 (ECF No. 14).[2]

---

[1] Citations to the record (ECF No. 4) are referred to as "R."
[2] The Supplemental Rules for Social Security indicate that "The action is presented for decision by the parties' briefs." (Supp. Rule 5.)

B. **Factual Background**

1. Medical Evidence

   a. Dr. Patterson

On August 29, 2022, Kevin R. Patterson, M.D., a board-certified psychiatrist, submitted a medical opinion based on his treatment of Smith since January 2020 for psychiatric conditions. (R. 655-58.) As noted by Dr. Patterson, Smith's diagnoses were Major Depressive Disorder, Unspecified Attention-Deficit Hyperactivity Disorder (ADHD), and unspecified anxiety disorder. (R. 655.) Her symptoms included but were not limited to difficulty concentrating or thinking, memory impairment, emotional lability and recurrent severe panic attacks. (R. 655.)

Based on his analysis of Smith's diagnoses and symptoms, Dr. Patterson opined that Smith was markedly limited in her abilities to understand, remember, or apply information. (R. 656.) He concluded that she would not be able to understand and carry out simple instructions or detailed but uninvolved written or oral instructions. (R. 656.) He found that Smith could not "follow-through with predictability due to memory, attention, distractibility," and that her "unpredictability of emotions/anxiety affect performance." (R. 656.)

Dr. Patterson also concluded that Smith could not consistently work with co-workers or supervisors since her interactions would be affected by her emotional state. (R. 657.) Regarding her ability to concentrate, persist, or maintain pace, he found marked limitations on her ability to concentrate, noting that her ability to maintain attention and concentration was limited to fifteen minutes. (R. 657.) Thus, she would be off-task for more than 25% of the workday. (R. 657.) She also lacked the ability to maintain regular attendance and punctuality and would require enhanced supervision. (R. 657.) Thus, it was his belief that she would have four or more absences per month. (R. 658.)

3

Dr. Patterson also stated that Smith was markedly limited in her ability to adapt or manage herself (R. 657) and would have inappropriate reactions "if agitated emotionally." (R. 658.) As a result, he concluded, she could not respond appropriately to changes in a work setting and that her "combination of poor focus and anxiety would be severe under this circumstance." (R. 658.)

    b. Shelbi Wood, PAC

Shelbi Wood, PAC[3] has been treating Smith since February 3, 2020. In a September 7, 2023 statement (R. 900-04), Wood offered a fair prognosis for Smith as she had "very poor psychosocial supports." (R. 900.) Wood's description of symptoms was similar to those noted in Dr. Patterson's first report. (R. 901.) Wood rated Smith's abilities to understand, remember, or apply information and maintain pace as moderately limited (R. 902), noting that "concentration, focus, distractibility, and poor short-term memory all impact these." (R. 902.) According to Wood, Smith could not follow oral instructions (R. 903) and could only maintain attention and concentration for less than two hours before needing redirection. (R. 903.) She would not be able to maintain attention and concentration or be punctual within customary tolerances. (R. 903.) Smith could not routinely interact with the public or consistently maintain socially appropriate behavior. (R. 903-04.) Like Dr. Patterson, Wood concluded that Smith would be off-task more than 25% of the workday and would miss four days of work per month. (R. 904.)

    c. Lori Scheffer, CRNP

Lori Scheffer, CRNP,[4] Smith's treating family practitioner, completed a medical opinion on her behalf on November 20, 2023. (R. 963-66.) Scheffer has treated Smith for years for her anxiety and depression. (R. 963.) Scheffer opined that Smith would be off-task more than 25% of

---

[3] Physician Assistant-Certified.
[4] Certified Registered Nurse Practitioner.

4

the day and could only maintain attention and concentration for less than an hour before requiring a break. (R. 963.) She also opined that Smith would be absent four days per month due to her mental health conditions. (R. 963.)

Scheffer also rendered opinions about Smith's physical abilities, noting that she could occasionally lift up to ten pounds (R. 964), sit and stand/walk for up to three hours each and would require a sit/stand option (R. 964) and occasionally use foot controls. (R. 965.) Scheffer also stated that Smith could not balance, stoop, crouch or crawl, and rarely kneel or rotate her head and neck. (R. 965.) She could frequently reach with her left arm but only occasionally reach laterally and rarely overhead with her right arm. (R. 965.)

                d.   Virginia Pierce, MS, APRN-CNP

On December 17, 2023, Virginia Pierce, MS, APRN-CNP,[5] drafted a medical opinion letter regarding Smith. (R. 968-72.) Based on her review of the medical records, Pierce opined that Smith could only reach or handle "with the right upper extremity for very little to 1/3 of an 8-hour workday." (R. 968.) Pierce noted specific medical records, including a January 26, 2021 x-ray of her shoulder and an October 5, 2021 surgical procedure performed by Dr. Douglas.(R. 968.)

Pierce explained that:

> The diagnostic studies and exam findings are consistent with Ms. Smith's subjective complaints, as well as support my opinion that she requires limitations on her workday. Ms. Smith has chronic right shoulder pain. Shoulder pain may arise from the shoulder joint itself of from any of the many surrounding muscles, ligaments or tendons. Shoulder pain that comes from the joint usually worsens with activities or movement in the arm or shoulder. Ms. Smith had an x-ray of the right shoulder which revealed a type III acromioclavicular joint separation and an acute avulsion fracture of the acromion. She underwent surgical repair of the shoulder dislocation. Due to surgical intervention, Ms. Smith would be limited to reaching or handling with her right upper extremity for very little up to one third of an 8-hour workday.

---

[5] Advanced Practice Registered Nurse-Certified Nurse Practitioner.

(R. 969.)

        2. <u>Hearing Testimony</u>

           a. Smith's testimony

Smith testified at the hearing on November 6, 2023. She has a high school education (R. 43) and last worked in 2019 as a housekeeper at a motel. (R.44.) Her only past full-time work was as a homecare worker. (R. 45.) She lives in a single-wide trailer by herself. (R. 50.) Her nephew helps her with her finances and paying her bills and drives her to the grocery store because she does not have a car. (R. 49-51.) She is able to cook, clean and do laundry. (R. 51.) When asked about her chores around the home, she said that by the end of the day, she is sore, must lie down and "pay[s] for it at the end of the day." (R. 58.)

While she watches television, she testified that she cannot follow the plot of a show unless she watches it multiple times. (R. 51-52.)

Smith stated that she does not stand or sit in one position for very long, and her most comfortable position is lying down. (R. 53-54.) The heaviest thing she lifts is a vacuum cleaner. (R. 54.) She estimated that she could walk about twenty minutes at a time. (R. 52.) She stated that her right shoulder "wasn't corrected right" and she would have to have more surgery. (R. 55.) She cannot pick up small items like a paper clip or coin. (R. 56.) She takes medications for ADHD, diabetes and issues with her shoulder and her back, but the pain medication for her shoulder only "takes the edge off." (R. 54.) She is also hard of hearing. (R. 58.)

Smith believes that her anxiety would keep her from working full-time. (R. 54.) According to her testimony, it affected her at work because she would start crying and feeling overwhelmed. When she was cleaning rooms at a hotel, her boss told her to pick up the pace but she could not do it. Since she stopped working, her anxiety does not bother her as much. (R. 57.)

b. Vocational Expert

Testimony was also elicited from a vocational expert, Sherry Kristal-Turetzky ("VE"). (R. 59-66.) When asked to assume the restrictions which the ALJ ultimately adopted and included in the residual functional capacity ("RFC"), the VE ruled out Smith's past job because of frequent contact with the public. (R. 61.)[6] The VE testified, however, that if the exertional level of a hypothetical person with Smith's characteristics was reduced to sedentary, that person could perform the jobs of document preparer and addresser or addressing clerk. (R. 62.) Such a person could be off task no more than ten percent and could miss only eight days of work per year, including leaving early or coming in late. (R. 63.)

When also asked to consider reaching ability being reduced to occasional due to upper right extremity issues, the VE testified that the jobs she had identified would be excluded, but other jobs would not be, specifically usher and furniture rental clerk. At the same time, the VE admitted that these jobs would require frequent or continuous interaction with the public. (R. 64-65.)

3. ALJ's Decision

Among other findings, the ALJ noted that Smith had not engaged in substantial gainful activity since August 6, 2019, the alleged onset date. The ALJ also found that she had severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the right shoulder, osteoarthritis of the right hand, substance use disorder, depression, anxiety, post-traumatic stress disorder and ADHD. With respect to her mental impairments, the ALJ found her ability to understand, remember and apply information, her ability to interact with others, her ability to concentrate, persist and maintain pace and her ability to adapt or manage herself all to

---

[6] The VE described Smith's past work as: "home health attendant. The DOT Code is 354.377-014, entry level, semi-skilled with an SVP of 3, classified as medium, performed at light." (R. 60.)

be moderately limited. (R. 21.)

The ALJ concluded that Smith did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment and that she had the RFC to perform light duty work with restrictions.[7] The ALJ concluded that considering Smith's age, education, work experience and RFC, there were other jobs of light duty that exist in significant numbers in the national economy that she could perform, including marker, collator operator and router.

Based on these findings, the ALJ found that Smith was not disabled from August 6, 2019 through March 14, 2024. (R. 19-29.)

### C. Standard of Review

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing § 405(g)). The Court recently explained that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.* It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.

---

[7] Restrictions were as follows: she could not crawl or climb ladders, ropes or scaffolds; she could occasionally balance, stoop, kneel, crouch and climb ramps and stairs; she could have no exposure to more than moderate noise; she could frequently reach and handle with the right upper extremity; she could have occasional exposure to non-weather extreme temperature extremes of heat and cold; she could understand, remember and carry out simple instructions; she could have frequent interactions with supervisors, coworkers and/or the public; she could not perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; and she could deal with occasional changes in a routine work setting.

> Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Id.* at 102-03 (other citations omitted).

The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

To evaluate disability claims, the Commissioner uses a five-step sequential process. The process requires an ALJ to consider: (1) whether the claimant is doing "substantial gainful activity"; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals the listings in the regulations; (4) whether, considering the claimant's residual functional capacity ("RFC")[8] and past relevant work, the claimant can still perform past relevant work; and (5) if not, whether considering the claimant's RFC, age, education and work experience, the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014) (recounting the five-step process).

The claimant bears the burden of proof at steps one through four, including the determination of the RFC, although the ALJ makes the ultimate disability and RFC determinations.

---

[8] RFC is the most a claimant can do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

9

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Zirnsak*, 777 F.3d at 611. At the fifth step, the Commissioner bears the burden of demonstrating that the claimant is able to perform work that is available in the national economy. *Bowen*, 482 U.S. at 146 n.5; *Zirnsak*, 777 F.3d at 612. See 20 C.F.R. § 404.1560(c)(2) ("we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.")

> The Court of Appeals has explained that:
>
> When, as in this instance, mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis. *Id.* §§ 404.1520a(a), 416.920a(a). An ALJ assesses mental impairments in the following way.
>
> As part of step two of the disability analysis, the ALJ decides whether the claimant has any "medically determinable mental impairment(s)." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1); *see also id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (providing that, at step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment"). Then, as part of that same step and also step three of the disability analysis, the ALJ determines "the degree of functional limitation resulting from the impairment(s)[.]" *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2); *see also id.* §§ 404.1520a(d), 416.920a(d), 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (explaining that the ALJ uses "the degree of functional limitation" in assessing "the severity of [the claimant's] mental impairment(s)[,]" which is considered at steps two and three). The ALJ does so in "four broad functional areas ... : Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The first three of those areas are rated on a "five-point scale: None, mild, moderate, marked, and extreme." *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth is rated on a scale of: "None, one or two, three, four or more." *Id.*
>
> The ALJ uses that degree rating in "determin[ing] the severity of [the] mental impairment(s)[,]" which is considered at steps two and three. *Id.* §§ 404.1520a(d), 416.920a(d); *see also id.* §§ 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (stating that, at steps two and three, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)"). "If ... the degree of [the claimant's] limitation in the first three functional areas [is] 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [his] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1) (citation omitted).

> At step three, if the ALJ has found that a mental impairment is severe, he "then determine[s] if it meets or is equivalent in severity to a listed mental disorder." *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2); *see also id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (explaining that, at step three, the ALJ determines whether the claimant has "an impairment(s) that meets or equals" a listed impairment). That analysis is done "by comparing the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder." *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). For example, the claimant may have the equivalent of a listed impairment if, *inter alia*, he has at least two of "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]" *Id.* Pt. 404, Subpt. P, App. 1.
>
> Finally, to complete steps four and five of the disability analysis, if the ALJ has found that the claimant does not have a listed impairment or its equivalent, the ALJ "will then assess [the claimant's mental RFC]." *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3); *see also id.* §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v) (providing that, at steps four and five, the ALJ considers the claimant's RFC).

*Hess v. Commissioner Soc. Sec.*, 931 F.3d 198, 202-03 (3d Cir. 2019).

### D. Discussion

Smith raises one issue in her appeal. She contends that the ALJ improperly evaluated the supportability and consistency of the disabling medical opinions. In doing so, she argues, the ALJ failed to comply with 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2), which imposes a requirement to "explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."

"Supportability" is an internal check: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1).

11

"Consistency" is an external check: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2).

In support of her contention that the ALJ failed to comply with 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2), Smith points to the findings of the ALJ regarding the opinions of Shelbi Wood and Virginia Pierce. As to these opinions, the ALJ made the following conclusion:

> The opinion of Shelbi Wood, PAC, is generally persuasive (C16F). This opinion is generally supported by Ms. Wood's examination findings [which] generally note that the claimant's symptoms has [sic] been stable without hospitalization for years (C16F). Additionally, this opinion is generally consistent with the longitudinal record which generally describes the claimant as alert, oriented, cooperative, and calm with normal mood, affect, thought process, memory, attention, concentration, thought content, insight, and judgment (C2F/38; C6F/3, 8, 12; C11F/1, 4, 7; C19F/3, 10, 27; C3F/4, 12, 16, 104). However, the opinion that the claimant could maintain attention and concentration for less than 2 hours, would be off [task] 25%, and would be absent from work 4 days per month is not persuasive (C16F). This opinion is not supported by Ms. Wood's examination findings which generally describe the claimant as alert and oriented, with normal memory, attention, concentration, and thought process and content (C11F). Additionally, this opinion is not consistent with the longitudinal [record] noting the claimant as alert, oriented, cooperative, and calm with normal mood, affect, thought process, memory, attention, concentration, thought content, insight, and judgment (C2F/38; C6F/3, 8, 12; C11F/1, 4, 7; C19F/3, 10, 27; C3F/4, 12, 16, 104). Furthermore, this opinion is not consistent with the claimant's own statements that she was able to help care for her mother.
>
> . . .
>
> The opinion of Virginia Pierce, MS, APRN-CNP is unpersuasive (C21F). This opinion is not supported by reference to relevant clinical evidence, as Ms. Pierce stated reliance [was] on the claimant's subjective complaints and not objective medical findings (C21F). Additionally, this opinion is inconsistent with the longitudinal evidence which generally describes the claimant as in no acute distress with normal gait, strength, range of motion, sensation, and neurological functioning (C2F/38; C6F/3, 8, 12; C11F/4, 7; C19F/3, 10, 13; C5F/21, 26, 46; C3F/4, 16, 104-105). Specifically, treatment records from University Orthopedics Center noting no acute distress, normal ambulation, no weakness in the upper or lower extremities, and only some discomfort with full cervical range of motion (C22F).

(R. 26.)

The ALJ found that the opinion of Shelbi Wood, PAC was generally persuasive and generally supported by her examination findings and the longitudinal record regarding mental health matters such as memory, concentration and judgment.[9] The ALJ also concluded, however, that Wood's opinion that the claimant could only maintain attention and concentration for less than 2 hours, would be off task 25% of the time and would be absent from work 4 days per month was not persuasive.

Smith contends that the ALJ's decision does not provide sufficient explanation to allow for appropriate judicial review. As she notes, while finding Wood's opinion "generally persuasive," the ALJ rejected only those portions that would lead to a determination that Smith was disabled based on the VE's testimony. Smith also argues that the fact that she appeared alert, oriented, cooperative and calm during a mental therapy appointment is not inconsistent with findings that she could not maintain attention and concentration for more than two hours before needing redirection, could not routinely interact with the public and could not consistently maintain appropriate behavior, or that she would be off-task more than 25% of the workday and would miss four days of work per month.

Smith also highlights the fact that Wood's opinion about her abilities is consistent with the findings by Dr. Patterson and Lori Scheffer, both of which were rejected by the ALJ. While the Commissioner asserts that Smith's reference to these opinions is improper because it suggests that

---

[9] Smith claims that the findings about her mental condition were not as "normal" as the ALJ suggested. For example, on August 29, 2022, she was observed to be tearful and possessing an "okay" mood and only fair attention, concentration, insight and judgment. (R. 708.) On September 20, 2021, "affect was tearful, her mood was frustrated, judgment, insight and impulse control were only fair." (R. 711.)

13

the Court should reweigh evidence that the ALJ already considered, the Court concludes that Smith is not asking the Court to reweigh this evidence. Rather, the decision of the ALJ must be evaluated based on his consideration of all the evidence. In finding that Smith is not disabled, the ALJ rejected opinions from four separate medical providers. At the same time, he relied on these opinions to the extent that they supported his own conclusions. This runs contrary to the ALJ's statutory requirement to evaluate the supportability and consistency of medical opinions. "The ALJ is not entitled to 'cherry pick' favorable evidence and ignore records that run counter to [his] findings." *Piper v. Saul*, 2020 WL 709517, at *4 (W.D. Pa. Feb. 12, 2020).

As it relates to Pierce's opinion, the ALJ concluded that it was based only on Smith's subjective complaints. This is a mischaracterization of Pierce's findings, however, in which objective medical evidence was cited, including, among other things, an x-ray of Smith's shoulder and an operation which did not successfully restore her the normal function of her shoulder.[10] In addition, the ALJ's reliance on records from University Orthopedics Center, "noting no acute distress, normal ambulation, no weakness in the upper or lower extremities, and only some discomfort with full cervical range of motion" (R. 26), is misplaced. That record is dated August 13, 2019 (R. 973). This is long before Smith's shoulder injury in January 2021 that led to surgery in October 2021.[11]

The ALJ's conclusions about the facts underlying Pierce's opinion are at odds with the manner in which evidence must be considered. An ALJ "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). *See also Platt v.*

---

[10] As Smith notes in her reply brief, the Commissioner's only response to this evidence is that Pierce "never mentions atrophy."

[11] Although Smith reported shoulder pain previously, on January 25, 2021, she fell and sustained a fracture to the shoulder. (R. 397, 400.)

*O'Malley*, 2024 WL 3401329, at *4 (W.D. Pa. July 12, 2024) ("ALJs may not mischaracterize or overlook evidence.")

Thus, and contrary to 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1), 20 C.F.R. § 404.1520c(c)(2) and § 416.920c(c)(2), the ALJ failed to properly evaluate the consistency and supportability of the evidence about Smith's physical health by rejecting without explanation relevant portions of the findings of four medical providers. Moreover, the ALJ mischaracterized the evidence about Smith's mental health and by doing so, improperly minimized her condition. Therefore, the ALJ's decision was not supported by substantial evidence.

For these reasons, the decision of the Commissioner denying benefits should be reversed, and the case should be remanded to the Commissioner for further review.

## III. Conclusion

For the reasons explained above, it is respectfully recommended that, Sentence Four of Section 405(g), the decision of the Commissioner of Social Security denying Plaintiff's claims for benefits be reversed and that this matter be remanded to the Commissioner for further review.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by December 10, 2025. Any party opposing the objections shall file a response by December 24, 2025. Failure to file timely objections will waive the right of appeal.

Dated: November 26, 2025        /s/ Patricia L. Dodge
                                PATRICIA L. DODGE
                                UNITED STATES MAGISTRATE JUDGE